**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>DELPHINE CAMPBELL,</td><td>*</td><td></td></tr>
<tr><td>  Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Case No.: PWG-18-150</td></tr>
<tr><td>TOYOTA MOTOR CREDIT CORP.,</td><td>*</td><td></td></tr>
<tr><td>  Defendant.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Delphine Campbell filed a class action suit in the Circuit Court of Maryland for Montgomery County for violations of Maryland's credit grantor closed end credit provisions statute ("CLEC"), Md. Code Ann., Com. Law §§ 12-1001 – 12-1029.  Compl. ¶ 1, ECF No. 2. On January 17, 2018, Defendant Toyota Motor Credit Corporation ("TMCC") removed the case to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109–2, 119 Stat. 4.  Not. of Removal, ECF No. 1.  Plaintiff filed a Motion to Remand, arguing that removal was improper because her alleged class did not exceed one hundred people and the amount in controversy did not exceed $5,000,000.  Pl.'s Mot. to Rem., ECF No. 23.  Defendant opposed Plaintiff's motion and filed a cross motion to dismiss the Complaint for failure to state a claim.  ECF No. 24.[1]  Plaintiff's Motion to Remand will be denied because TMCC has provided sufficient evidence to demonstrate the alleged class of plaintiffs is at least one hundred people and the amount in controversy exceeds $5,000,000.

---

[1] The parties fully briefed the motions.  ECF Nos. 23–26.  A hearing is not necessary.  *See* Loc. R. 105.6.

Defendant's Motion to Dismiss will be granted because Plaintiff has not stated a claim for which relief can be granted and, because she has had multiple opportunities to do so (in this and a prior litigation), her Complaint is dismissed with prejudice.

## CLEC's Purpose and Structure

CLEC, a statutory scheme intended to "'entice creditors to do business in the State [of Maryland],'" also includes consumer protection provisions and should be "read to handle credit grantors with a relatively light touch while still protecting consumers." *Askew v. HRFC, LLC*, 810 F.3d 263, 270 (4th Cir. 2016) (quoting *Ford Motor Credit Co. v. Roberson,* 25 A.3d 110, 117–18 (Md. 2011)). The CLEC provisions, which apply only if a credit grantor affirmatively elects for them to apply to a specific loan, impose, *inter alia*, "notice and other detailed procedural requirements for the repossession and sale of collateral," as well as "a stringent penalty for violation of the statutory scheme," including treble damages for knowing violations. *McDaniels v. Westlake Servs., LLC*, No. ELH-11-1837, 2013 WL 2491337, at *2 (D. Md. June 7, 2013) (citing Com. Law § 12–1018(a)(2), 12–1021, 12–1013.1(b)(1)). For example, if the lender sells repossessed goods at a private sale, it must make "a full accounting . . . to the borrower in writing," and the "accounting shall contain"

> (i) The unpaid balance at the time the goods were repossessed;
>
> (ii) The refund credit of unearned finance charges and insurance premiums, if any;
>
> (iii) The remaining net balance;
>
> (iv) The proceeds of the sale of the goods;
>
> (v) The remaining deficiency balance, if any, or the amount due the buyer;
>
> (vi) All expenses incurred as a result of the sale;
>
> (vii) The purchaser's name, address, and business address;
>
> (viii) The number of bids sought and received; and

(ix) Any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality.

Com. Law § 12-1021(j)(2).

In litigation brought for an alleged violation of CLEC, the statute, "by its plain terms, limits a debtor's relief . . . to any amounts paid in excess of the principal amount of the loan." *Bediako v. Am. Honda Fin. Corp.*, 537 F. App'x 183, 186 (4th Cir. 2013) (citing Com. Law § 12–1018(a)(2)); *see also Gardner v. GMAC, Inc.*, 796 F.3d 390, 395 (4th Cir. 2015); *Brown v. Capital One, N.A.*, No. GJH-17-3076, 2018 WL 3105768, at *3 (D. Md. June 25, 2018).   In determining if the lender has received money in excess of the principal amount of the loan, the court "recharacterize[s] all of the borrower's payments during the life of the loan as payments toward principal and then subtract[s] that total and the sale proceeds from the original principal amount of the loan." *Gardner*, 796 F.3d at 394 (citing *Bediako*, 537 F. App'x at 186 & n.1).  If the principal amount of the loan still has not been met, the borrower is unable to recover for a violation. *See id.*  Indeed, CLEC specifically allows for the lender to collect the principal amount of the loan even after a notice violation. *See* Com. Law § 12-1018(a)(2) ("[I]f a credit grantor violates any provision of this subtitle the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan.").

Notably, "[i]f the debtor can show that the creditor failed to abide by the requirements of CLEC in selling the collateral, *the creditor may be barred from a deficiency judgment*." *Gardner*, 796 F.3d at 395 (quoting *Gardner v. Ally Fin. Inc.*, 61 A.3d 817, 823 (Md. 2013)) (emphasis added by Fourth Circuit).  For example, when, as here, the collateral is sold in a private sale, if "[t]he Commissioner of Financial Regulation . . . make[s] a determination . . . that

the sale was not accomplished in a commercially reasonable manner," then "the Commissioner may enter an order disallowing any claim for a deficiency balance."[2]  Com. Law § 12-1021(j)(3). Thus, the amount in controversy for litigation purposes includes both the amount the borrower paid in excess of the principal amount of the loan and the amount of any deficiency to the total loan balance beyond the principal amount, as the creditor may have no legal recourse for collection if it violated the statute.  *See Sayre v. Westlake Servs, LLC*, No. ELH-15-687, 2015 WL 4716207, at *7, *9 (D. Md. Aug. 7, 2015) (noting that "'the test' to determine the amount in controversy is 'the pecuniary result to either party which [a] judgment would produce'" and finding that the defendant had established that its "pecuniary harm" included both "refunds to borrowers who paid . . . more than the principal amount of their loan" and the defendant's "inability . . . to collect amounts owed by borrowers above the principal amount of their loan" (quoting *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002)); Com. Law § 12-1018(a)(2).

## <u>Background</u>

On April 5, 2014, Ms. Campbell entered into a Retail Installment Contract ("RISC"), which the parties affirmatively elected to be governed by CLEC, to purchase a Toyota Rav 4. Compl. ¶¶ 17–19.  Through TMCC, Ms. Campbell financed $26,889.48, and the RISC also included an additional $5,128.20 in finance charges.  *Id.* ¶¶ 21–24.  Ms. Campbell made "numerous payments"; however, ultimately, TMCC repossessed the vehicle "before June 27, 2016."  *Id.* ¶¶ 25, 28.  After repossessing the vehicle, TMCC conducted a private sale and provided a post-sale notice to Ms. Campbell, which stated the name of the purchaser ("A 1 Imports Inc") and the state ("MD").  Compl. ¶ 31; Repossession Accounting Statement ("RAS"),

---

[2] The creditor still may "try to collect the deficiency by means other than a judgment, or apply toward the outstanding principal any funds they receive after the repossession sale." *Gardner*, 796 F.3d at 395.

ECF No. 24-2, at 3. However, the post-sale notice lists A 1 Imports' street address, town, and zip code as "N/A." Compl. ¶ 31; RAS, ECF No. 24-2, at 3. TMCC also sent Ms. Campbell a deficiency notice following the sale of her car and stated she still owed TMCC $3,538.91. Compl. ¶ 32; ECF No. 24-2, at 2–3.

Ms. Campbell initially filed a similar action against TMCC regarding the same underlying events in state court, which was removed to this Court on October 10, 2017. *Campbell v. Toyota Motor Credit Corp.*, No. RWT-17-2976 (D. Md. Nov. 16, 2017) ("*Campbell I*"). In *Campbell I*, Ms. Campbell alleged the same claims as she does here but defined her class as "all persons whose personal property was repossessed by TMCC in connection with a credit contract governed by CLEC, whose vehicle was sold at private sale and whose post-sale notice did not include the purchaser's address." *Campbell I* Am. Compl. ¶ 37, ECF No. 22 in RWT-17-2976. Her amended complaint (as well as her initial pleading) alleged that the class "consisted, at a minimum, of more than one hundred (100)" members. *Id.* ¶ 39; *see also* Compl. ¶ 39, ECF No. 2 in *Campbell I*. But then, in seeking remand, she argued that TMCC had not demonstrated that the potential class was greater than 100 people, ECF No. 20 in RWT-17-2976, even though she pleaded exactly that. And, in an effort to obtain "a higher level of judicial expertise . . .by seeking to have the case assigned to the Business and Technology Case Management Program," Ms. Campbell had informed the state court prior to removal that the class size exceeded 500 members. *Campbell I* Mem. Op. 2, ECF No. 30 in RWT-17-2976.[3]

Judge Titus denied Ms. Campbell's Motion to Remand because there was sufficient evidence in the record—mainly Ms. Campbell's own statements—that demonstrated there was

---

[3] I take judicial notice of the Memorandum Opinion issued by Judge Titus in the related case. Fed. R. Evid. 201(b)(2) (court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

an adequate class size and amount in controversy for the Court to have subject matter jurisdiction over her claims. *Id.* at 3–4. Judge Titus observed that it was "disingenuous for Campbell to repeatedly manipulate the class size based on the interests at stake," stating that "Campbell cannot tell one judicial body that the class size is 500 and thus warrants specialized judicial processing, but then tell the next judicial body that the class size is only 100 . . . ." *Id.* Ms. Campbell's Motion to Remand was denied on November 16, 2017, and that same day, she filed a notice of voluntary dismissal, ECF No. 31 in RWT-17-2976, which was approved by a marginal order, ECF No. 32 in RWT-17-2976.

Ms. Campbell then initiated this action in the Circuit Court for Montgomery County on November 20, 2017, and TMCC again removed it to this Court on January 17, 2018. Not. of Removal 1; Compl. 1. In her Complaint, Ms. Campbell revised the class definition she had provided in *Campbell I* as follows:

> All persons whose personal property was repossessed by TMCC in connection with a credit contract governed by CLEC: (1) whose personal property was sold at a private sale; (2) whose post-sale notice did not include the purchaser's address; *and (3) where TMCC collected more than the principal amount of the credit contract.*

Compl. ¶ 35 (emphasis added to show new language added to *Campbell I* definition). This time around, Ms. Campbell alleges that the class is "a minimum of 50" people and that the claims of the class "exceed" $75,000. *Id.* at 6, 9 n.2. She claims that TMCC collected more than the principal amount of her loan and that she is entitled to relief under CLEC because TMCC violated its notice provisions by not providing the buyer's full address. *Id.* ¶¶ 26, 51.

### Campbell's Motion to Remand

Federal district courts "have original jurisdiction of any civil [class] action in which the matter in controversy exceeds the sum of value of $5,000,000 exclusive of interest and costs," which maintains minimal diversity ("any member of a class of plaintiffs is a citizen of a State

and any defendant is a foreign state or a citizen or subject of a foreign state"), and in which "the number of members of all proposed plaintiff classes in the aggregate is [not] less than 100." 28 U.S.C. § 1332(d)(2), (5). When a plaintiff files such an action in state court, the action "may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, — U.S. —, 135 S. Ct. 547, 553–54 (2014). The "district court must make findings of jurisdictional fact in connection with the amount in controversy. But, these facts need not be established to a legal certainty . . . Rather, they are subject only to the preponderance standard." *Sayre*, 2015 WL 4716207, at *7 (internal citations omitted).

As noted, "it is settled that the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Emps. Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir. 1964)). Further, "'[e]stimating the amount in controversy is not nuclear science,' as a removing defendant is somewhat constrained by the plaintiff." *Scott v. Cricket Com., LLC*, 865 F.3d 189, 196 (4th Cir. 2017) (quoting *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1317 (11th Cir. 2014)). "A removing defendant can use overinclusive evidence to establish the amount in controversy so long as the evidence shows it is more likely than not that 'a fact finder might legally conclude that' damages will exceed the jurisdictional amount." *Id.* (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)). In the end, TMCC

"need not tailor its evidence to exactly match [Campbell's] proposed class, it must provide enough factual detail for the district court to discharge its constitutional duty and assess whether jurisdiction exists." *Id.* at 197.

As will be seen, this Court has subject matter jurisdiction over this matter because TMCC has provided sufficient evidence that it is more likely than not that Ms. Campbell's proposed class is at minimum 100 people and the amount in controversy exceeds $5,000,000. Specifically, TMCC's declaration and Ms. Campbell's pleadings and statements in *Campbell I* show that it is more likely than not that the amount in controversy exceeds $5,000,000 based on the total amount of alleged payments that TMCC may need to return to the borrowers if the plaintiffs prevail, combined with the total amount of the deficiencies that it allegedly cannot recover.

*Class Size*

This action is Ms. Campbell's second attempt to litigate essentially the same matter and to avoid a determination that a federal court has jurisdiction over the matter. *See Campbell I* Mem. Op; *see also* Pl.'s Voluntary Dismissal in *Campbell I* (dismissing the case the same day the Motion to Remand was denied). In *Campbell I*, although TMCC provided evidence that approximately 2,692 people met Campbell's class definition, Sanchez Decl. ¶ 5, Judge Titus did not need to reach a determination on the sufficiency of TMCC's evidence because Campbell herself "described the size of the class" as consisting of 500 Maryland consumers. *Campbell I* Mem. Op. 2–4. On that basis, Judge Titus held that the jurisdictional requirement for class size was present. *Id.* As noted, Judge Titus stated that it was "disingenuous for Campbell to repeatedly manipulate the class size based on the interests at stake," providing different numbers to the state and federal courts. *Id.* at 3–4. Notably, even in her complaint and amended

complaint in *Campbell I*, Ms. Campbell claimed that the class had "more than one hundred" members. Compl. ¶ 39; Am. Compl. ¶ 39.

Here, Ms. Campbell—again "manipulating the class size"—reduces the class size to "consist, at minimum, of fifty (50) borrowers." Compl. ¶ 37. Ms. Campbell also removed numerous allegations that appeared in her *Campbell I* Complaint, including originally pleading in *Campbell I* that TMCC repossessed secured property from at least 250 borrowers a year and now, not pleading any particular number of borrowers whose vehicles were repossessed. *Compare Campbell I* Compl. ¶ 8, *with* Compl. ¶ 6. Ms. Campbell takes issue with TMCC's declaration that the class consists of 2,692 members because, in her view, TMCC does not demonstrate that all 2,692 individuals would be within her revised class definition (which now restricts the class to borrowers from whom "TMCC collected more than the principal amount of the credit contract"), and does not show that each received a post-sale notice that was deficient because it did not include the buyer's address. Pl.'s Mot. 6. What TMCC's declaration indisputably does show is that during the relevant period, 2,692 individuals had their vehicle repossessed and "were sent a post-sale notice after a private sale." Sanchez Decl. ¶ 3.

Although Ms. Campbell argues that this assertion does not establish that her class meets the jurisdictional requirements, Pl.'s Mot. 4–7, she does not provide any *evidence* to the contrary. "When only one party submits evidence, [the court] accept[s] it as uncontroverted but must still test whether the responsible party has met its burden." *Scott*, 865 F.3d at 196 n.5. Thus, the issue is whether TMCC has demonstrated that it is more likely than not that out of the pool of 2,692 customers from whom it repossessed vehicles, at least 100 of them were sent notices without a complete address and paid more than the principal amount to TMCC. *See Dart Cherokee*, 135 S. Ct. at 553–54; *Sayre*, 2015 WL 4716207, at *7; *see also Scott*, 865 F.3d at 196.

Ms. Campbell has alleged that "at least 50" of the 2,692 customers qualify—an obvious attempt to again obscure the number of class members to fall below the jurisdictional minimum—but, in actuality, an unsuccessful one, because a class of "at least 50" can include at least 100 (or more) members. And, she stated in *Campbell I* that 500 of them were sent notices without a complete address. Also, the evidence that the possible pool of qualifying customers is 2,692 individuals is uncontroverted. It is more likely than not that at least another 50 of the 2,692 customers who had their vehicles repossessed (i.e., about 2% of the possible customers) also were sent notices without a complete address and were charged more than the principal. This is especially so, given that Ms. Campbell alleges that TMCC uses form notices to report the results of repossession sales to its borrowers. *Campbell I* Compl. ¶ 8; *see also* Def.'s Opp'n & Mot. 8 (noting that Plaintiff "fil[ed] a class action complaint based on the use of a form notice"). Therefore, I find that TMCC has satisfied its burden of proving the jurisdictional requirement that at least one hundred people meet the class definition. *See Scott*, 865 F.3d at 196 & n.5; *Swan v. Santander Consumer USA*, 2015 WL 1242767, at *3–4 (D. Md. Mar. 17, 2015) (holding that the defendant was not required to "perform a ministerial determination" to provide exact "interest, fees and charges it has collected from the class" and that the defendant had satisfied its burden by demonstrating that it only would have to "have collected less than 5% of the $6900 finance charge that the average class member incurred").

*Amount in Controversy*

Ms. Campbell's Complaint also attempts to obscure the amount in controversy. In describing the damages in this case, she states that her individual claims are less than $75,000, but the damages of the individual claimants in her proposed class, when aggregated, exceed $75,000. Compl. 9 n.2. Yet, the only specific amounts Ms. Campbell pleads are those related to

the principal sum she borrowed ($26,889.48), her finance charges ($5,128.20), and the amount TMCC attempted to collect as a deficiency ($3,538.91)—totaling far below $75,000. *Id.* ¶¶ 23–24, 32. "When a plaintiff's complaint leaves the amount of damages unspecified, the defendant must provide evidence to 'show . . . what the stakes of litigation . . . are given the plaintiff's actual demands.'" *Scott*, 865 F.3d at 194 (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)).

In *Campbell I*, Ms. Campbell pleaded that "TMCC collected more than the principal amount of the loan on Campbell's account," having "received payments on the RISC toward interest, costs, fees, or other charges totaling five thousand dollars," Am. Compl. ¶¶ 28–29, and Judge Titus found that she claimed "improper payment in the amount of $5,000," *Campbell I* Mem. Op. 1. Given that she has alleged that she represents others similarly situated, Campbell's claimed payments beyond the principal reasonably may be taken as typical of the payments each class member made. *See* Fed. R. Civ. P. 23(a)(3). Also, TMCC has provided evidence that the "estimated amount of interest, fees, and other charges that remain unpaid as part of the proposed class members' outstanding deficiency balances is approximately $21,754,000.00," or approximately $8,080.99 per class member (based on a class size of 2,692). *See* Sanchez Decl. ¶ 6. Therefore, the average amount in controversy per class member is $5,000 (the average amount paid beyond the principal) plus $8,080.99 (the average amount of unpaid interest, fees and charges that TMCC will not be able to recover), for a total of $13,080.99. *See Swan*, 2015 WL 1242767, at *2 (using the average claim from the defendant's affidavit to calculate the amount in controversy); Sanchez Decl. ¶ 6; *Campbell I* Mem. Op. 1. Accordingly, to establish that the amount in controversy exceeds $5,000,000, the potential class in this matter must exceed 382 people ($13,080.99 x 382 = $4,996,938.18).

I find that there is sufficient evidence in the record to establish that it is more likely than not that the class exceeds 382 people. Plaintiff claims that the class has *at least* 50 members. Compl. 6. She pleaded in *Campbell I* that a very similar class exceeded 100 members, while informing the state court that the *Campbell I* class exceeded 500 members, and Judge Titus found that the class was, at a minimum, 500 people. *Campbell I* Mem. Op. 3. As Judge Titus did, I find it disingenuous that Ms. Campbell has finessed the size of her class to a *minimum* of 50 individuals (which, of course, has no upper limit and quite clearly could equal or exceed 382 claimants) and agree with Judge Titus's logic that a class size *exceeding* 50 people is not beyond the reach of the class size that she pleaded. *See id*. at 2. Additionally, as Ms. Campbell has not presented any evidence to contradict TMCC's estimates, choosing instead to argue in conclusory terms that it is insufficient to establish the requisite amount in controversy, I am left to determine whether TMCC has met its burden. Given that 382 is only about fourteen percent of the potential pool of 2,692 individuals identified in TMCC's declaration, it is more likely than not that the class size exceeds 382 people, such that the combined claims exceed $5,000,000.[4] *See Swan*, 2015 WL 1242767, at *3–4; *see also Lewis v. Verizon Comms., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability. *See McPhail v. Deere & Co.,* 529 F.3d 947, 956 (10th Cir. 2008) ('The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the

---

[4] Ms. Campbell argues that TMCC has attempted to independently expand her class definition, and therefore, this matter should be remanded because its declaration does not closely follow that of her class. Pl.'s Reply 5–7. As this argument was raised for the first time in her Reply, I will not consider it. *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered."); *Meerkreebs v. Astor & Sanders Corp.*, No. PWG-17-695, 2018 WL 1211539, at *6 (D. Md. Mar. 7, 2018) (same).

litigation.')"). Accordingly, this Court has jurisdiction, and I will deny Ms. Campbell's motion to remand. *See* 28 U.S.C. § 1332(d)(2), (5); *Scott*, 865 F.3d at 196–97; *Swan*, 2015 WL 1242767, at *3–4.

## TMCC's Motion to Dismiss

### *Standard of Review*

Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). Similarly, "unsupported legal allegations need not be accepted." *Nam v. 2012 Inc.*, No. DKC-15-1931, 2016 WL 107198, at *3 (D. Md. Jan. 11, 2016) (citing *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989)).

Although at this stage of the proceedings, I must accept the well pleaded facts alleged in Ms. Campbell's Complaint as true, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), when

reviewing a motion to dismiss, I "may consider documents attached to the complaint as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).

*Campbell's CLEC Violation Claim*

TMCC argues that Ms. Campbell fails to state a claim because (1) CLEC does not permit statutory damages (in the absence of a knowing violation, which is not alleged); and (2) Com. Law § 12-1018(a)(2) only forecloses TMCC's ability to obtain a deficiency judgment and does not provide for lenders to return to borrowers those payments that exceed the principal amount of the loan. TMCC also believes Ms. Campbell has failed to state a claim because she has not pleaded that TMCC collected any deficiency after the private sale of her vehicle. Def.'s Opp'n & Mot. 14–17. According to Ms. Campbell, her claim arises out of Com. Law § 12-1018(a)(2), which provides that "[e]xcept for a bona fide error of computation, if a credit grantor violates any provision of this subtitle the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." Plaintiff has conceded that she has not pleaded, and therefore, cannot receive compensation for, a knowing violation of CLEC—equal to three times the "amount of interest, fees, and charges

collected in excess" of the principal.  *See* Pl.'s Mot. 7–8; Com. Law § 12-1018(b).  Ms. Campbell argues that her Complaint is sufficient because she only needs to allege that TMCC both violated CLEC's notice provisions and collected more than the principal amount of her loan (by adding together all her payments and the proceeds from the private sale), and that she did indeed make  both of these allegations which should entitle her to relief.  Pl.'s Reply & Opp'n 8–14.

Notably, Ms. Campbell does not claim that the payments she herself has made exceed the principal amount of the loan; she relies on the combination of her payments and the proceeds from the vehicle sale to reach a total that exceeds the principal.  Certainly, accepting her allegations as true, when those two amounts are combined, the total exceeds the principal.  This Court's research has failed to uncover any prior decision in which the plaintiff personally paid less than the principal amount of the loan, but attempted to recover as damages additional payments received by the lender when the collateral was sold at a foreclosure auction—by claiming that the total sum of the plaintiff's payments, when added to the foreclosure sale proceeds, exceeded the principal amount of the loan.  It appears that the absence of authority on this specific point is why Ms. Campbell believes her case is distinguishable, not only in the facts but also in the result, from the cases cited by TMCC.  She argues that, unlike other plaintiffs, when her payments and the sale proceeds of her vehicle are recharacterized as counting towards the principal amount of her loan, the total exceeds the principal, and therefore, her case can proceed and she is entitled to a refund of the amount of any money TMCC received in excess of the principal.  *See* Pl.'s Reply & Opp'n 11.

However, this is not actually how the statute works.  As noted, it is designed to encourage lenders to operate within Maryland, and its consumer protections are minimal.  *See Askew v.*

*HRFC, LLC*, 810 F.3d at 270 (4th Cir. 2016). Section 12-1018(a)(2) "limits a debtor's relief under CLEC to any amounts *paid* in excess of the principal amount of the loan." *Bediako v. Am. Honda Fin. Corp.*, 537 F. App'x 183, 186 (4th Cir. 2013) (emphasis added); *see also Gardner v. GMAC, Inc.*, 796 F.3d 390, 394 (4th Cir. 2015); *Sayre*, 2015 WL 4716207, at *9; *Brown*, 2018 WL 3105768, at *3. Thus, Section 12-1018(a)(2) merely stops a creditor's collection from the debtor beyond the principal amount of the loan. When the Fourth Circuit and this Court have recharacterized a plaintiff's payments and the sale proceeds of his or her secured property as money counting towards the principal amount of the loan, it is not to determine if plaintiff is entitled to a refund, but rather to stop creditors from continuing to collect from the borrower, as the principal amount of the loan may have been satisfied. In other words, this statute only protects consumers by halting a lender's collection efforts against the plaintiff once it has recovered the principal amount of the loan; it does not provide a basis for a plaintiff's recovery when the plaintiff herself has not paid more than the principal amount of the loan.

Further, the Fourth Circuit has held that, unlike the Fair Debt Collection Practices Act, "CLEC does not provide for any fixed statutory damages beyond the plaintiff's actual loss." *Bediako*, 537 F. App'x at 186–87. Here, Ms. Campbell has not suffered any actual loss. Instead she is attempting to recover money TMCC gained from a third party after it sold her car because she defaulted on the loan TMCC extended to her. Her personal payments did not exceed the principal amount of the loan. Rather, she alleges that TMCC was able recover additional sums to satisfy the remainder she owed towards the principal through the sales proceeds. As she has not "*paid* in excess of the principal amount of the loan" or suffered any actual loss, Ms. Campbell has failed to state a claim. *See id.*

Indeed, even if TMCC violated CLEC's notice requirement as Ms. Campbell alleges, it still would be entitled to collect the principal amount of the loan; TMCC is not required, as a result of its alleged CLEC violation, to refund or forfeit all money it received beyond the principal. Rather, the Fourth Circuit has held that when a lender collects pre-repossession interest and other fees that exceed the principal—as is the case here—it is different from doing so after a CLEC violation has occurred. *Gardner*, 796 F.3d at 395 ("The lender [in *Comm'r of Fin. Regulation v. Ward*, No. CFR–FY2010–418, 2013 WL 6730011 (Md. Com. Fin. Reg. Nov. 26, 2013)] violated Maryland mortgage law at the time the loan was originated by operating without a license. As a result, the lender collected the reimbursed interest, etc. *after* the violation. Here, by contrast, GMAC's pre-repossession collection of interest, etc. occurred *before* any violation. This difference in timing renders *Ward* inapposite." (citations omitted)). Even though TMCC allegedly violated CLEC's notice provisions when it sent Ms. Campbell a deficiency notice, Ms. Campbell admits that she did not pay any additional money to TMCC after receiving the post-sale notice. Am. Compl. ¶ 34.

Ms. Campbell also argues that the Court should interpret CLEC like the Maryland Secondary Mortgage Loan Law ("SMLL"), Com. Law § 12-413, according to the Court of Special Appeals's decision in *Duckworth v. Bernstein*, 466 A.2d 517 (Md. Ct. Spec. App. 1983), which noted in *dicta* that a borrower could recover all interest and fees that the borrower paid if the lender violated SMLL on a non-commercial loan. However, in that case, the appellate court remanded for determination of whether the loan was non-commercial without determining if the borrower could recover in the case before it. Moreover, *Duckworth* is easily distinguished— beyond the basic facts that it dealt with a different statute and the issue of whether a loan was non-commercial—because the *Duckworth* Court considered a statutory violation that (if present

at all) would have been present from the loan's inception. Therefore, if the borrower could recover at all (i.e., if the loan was non-commercial), he could recover any non-principal payments because all payments were made after the alleged violation. *Duckworth*, 466 A.2d at 525–26; *see also Gardner*, 796 F.3d at 395 (holding that any recovery by a borrower under CLEC would be limited to payments made after the statutory violation). Here, in contrast, there were no payments from Plaintiff after the occurrence of the alleged violation by TMCC.

Ms. Campbell's interpretation of CLEC § 12-1018(a)(2) does not account for the language of the statute in its entirety or the Fourth Circuit's holding in *Gardner*. The statute's language does not state that TMCC must refund or forfeit to the borrower any payment other than the principal upon the finding of any violation. It provides for such a refund only if the creditor knowingly violates CLEC; otherwise, it does not provide for a refund at all. *Compare* Com. Law § 12-1018(a)(2) ("[I]f a credit grantor violates any provision of this subtitle the credit grantor *may collect only* the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan.") (emphasis added), *with id.* § 12-1018(b) ("[A] credit grantor who knowingly violates any provision of this subtitle *shall forfeit* to the borrower 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle.") (emphasis added). Statutes are to be "read to give meaning to every word used and to do otherwise contravenes this cardinal rule of statutory construction." *Mid-Atlantic Power Supply Ass'n v. Pub. Serv. Comm'n of Md.*, 760 A.2d 1087, 1097 (Md. 2000); *see also Kaczorowski v. Mayor & City Council of Balt.*, 525 A.2d 628, 631 (Md. 1987) ("[S]tatutes dealing with the same subject matter should, when possible, be read together and harmonized."). The Maryland legislature could have required a creditor to forfeit to the borrower all but the principal amount of the loan for any violation, knowing or otherwise; however, the legislature

chose to word the statute without doing so. Rather, the statute was drafted to state that a violation would bar a creditor from legal recourse to collect any deficiency beyond the principal amount. *See* Com. Law §§ 12-1018(a)(2), 12-1021(j)(3); *see also Gardner*, 796 F.3d at 395 (holding that the creditor whose notice was insufficient regarding a public sale could not obtain a deficiency judgment but was not barred by other means from collecting the deficiency). CLEC establishes that the creditor cannot seek a judicial remedy beyond the principal of its loan if it violated CLEC's terms. Com. Law § 12-1018(a)(2). Because TMCC only collected interest and fees from Plaintiff prior to sending the alleged deficiency notice to her, Ms. Campbell is not entitled to a refund of the amount received by TMCC in excess of the principal amount of her loan.[5] Therefore, Ms. Campbell has not pleaded a claim under CLEC because she has not suffered any injury for which the statute affords a monetary recovery.

*Campbell's Breach of Contract Claim*

A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)). Under Maryland law, "[t]he elements of a claim

---

[5] Ms. Campbell's complaint only seeks monetary relief and does not seek declaratory or injunctive relief. However, even if she had sought declaratory or injunctive relief, she would not be entitled to it. *Gardner*, 796 F.3d at 397 ("We find that CLEC does not permit [declaratory or injunctive] relief to borrowers who allege a violation of the repossession notice requirements. A comparison of CLEC Sections 12–1007 and 12–1021 illustrates why. The legislature specifically provided that a violation of Section 12–1007, which covers insurance, entitles the borrower to '[a]n injunction to prohibit the credit grantor who has engaged or is engaging in the violation from continuing or engaging in the violation.' Md. Code Ann., Com. Law § 12–1007(f)(3)(i). In CLEC Section 12–1021, covering repossession, the legislature did not authorize similar relief. Instead, Section 12–1021 simply states that a violation of its provisions means that "the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement." *Id.* § 121021(k)(4)").

for breach of contract include 'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011)).

Where "the borrower['s] sole basis for a breach-of-contract claim is that [the creditor] violated CLEC," the Fourth Circuit has concluded:

> To allow them to pursue nominal damages by asserting a stand-alone breach-of-contract claim would effectively render CLEC's requirement that a borrower suffer actual damages a nullity. This is so because the only way for CLEC to govern a dispute is for the creditor to specifically elect it in the contract. Md. Code Ann., Com. Law § 12–1013.1(a). We do not think that Maryland's highest court would countenance such a result, and neither shall we.

*Gardner*, 796 F.3d at 397. As such, Ms. Campbell's breach-of-contract claim is foreclosed as her only claim stems from her CLEC contract with TMCC. *See id.*

*Dismissal with Prejudice*

As noted, Ms. Campbell filed a Complaint and an Amended Complaint in *Campbell I* and further edited her claims before presenting them in the Complaint she filed in state court in this litigation in an attempt to avoid federal jurisdiction. Thus, considering Ms. Campbell has failed to state a claim after having filed multiple complaints (once in this matter and twice before Judge Titus, *see Campbell I*, ECF Nos. 2, 22), dismissal with prejudice is appropriate. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013); *see also Adams v. Sw. Va. Reg'l Jail Auth.*, 524 Fed. App'x. 899, 900 (4th Cir. 2013). Moreover, given the legal deficiencies noted above with regard to the claims against Defendant, further amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that reasons to deny leave to amend include, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment").

## Campbell's Request for Question Certification

Ms. Campbell also requests that I certify the following questions to the Maryland Court of Appeals:

1. Whether CLEC § 12-1018(a)(2) authorizes a consumer to recover affirmative damages?
2. Whether a consumer must allege that a credit grantor collected amounts in excess of the principal amount of the credit contract and receipt of a non-principal payment after the alleged CLEC violation to state a claim for a violation of CLEC?

Pl.'s Reply & Opp'n 15.

> "[I]it is well established that the decision to certify a question to the Court of Appeals of Maryland is not obligatory and 'rests in the sound discretion of the federal court.'" *Hafford v. Equity One, Inc.*, Nos. AW–07–1633, AW–06–0975, 2008 WL 906015, at *4 (D. Md. Mar. 31, 2008) (quoting *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S. Ct. 1741, 40 L.Ed.2d 215 (1974); *Boyster v. Comm'r of Internal Revenue Serv.*, 668 F.2d 1382 (4th Cir. 1981)). In exercising such discretion, federal courts may decide not to certify a question to a state court where the federal court can reach a "reasoned and principled conclusion." *Hafford,* 2008 WL 906015, at *4. "Only if the available state law is clearly insufficient should the court certify the issue to the state court." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir.1994) (citing *Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir.1984), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2330, 85 L. Ed. 2d 848 (1985)). "When this guidance is available the federal court should decide the case before it rather than staying and prolonging the proceedings." *Arrington v. Coleen, Inc.*, [Nos. AMD-00-191. AMD-00-421, AMD-00-1374,] 2001 WL 34117735, at *5 (D.Md. Mar. 29, 2001).

*Marshall v. James B. Nutter & Co.*, RDB-10-3596, 2013 WL 3353475, at *7 (D. Md. July 2, 2013). Using the precedent in this Circuit, I am capable of resolving the state law issues currently before this Court. *See id.* at *6–7. Therefore, I need not certify a question to the Maryland Court of Appeals to determine the outcome of the parties' motions and will deny Plaintiff's request.

## <u>ORDER</u>

For the reasons stated in this Memorandum Opinion and Order, it is, this <u>16th</u> day of

July, 2018 hereby ORDERED that

1. Plaintiff's Motion to Remand, ECF No. 23, IS DENIED;

2. Plaintiff's request to certify a question to the Maryland Court of Appeals IS DENIED;

3. Defendant's Motion to Dismiss, ECF No. 24, IS GRANTED;

4. Ms. Campbell's Complaint IS DISMISSED WITH PREJUDICE; and

5. The Clerk SHALL CLOSE this case.

_____/S/_____
Paul W. Grimm
United States District Judge

jml